**CHATEAU COMMUNITY HOUSING ASSOCIATION, INC., Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

**No. C5–89–1091.**

Supreme Court of Minnesota.

March 2, 1990.

Jerome Halloran, Donald W. Niles, Doherty, Rumble & Butler, St. Paul, for relator.

Thomas L. Johnson, Hennepin County Atty., Mark Chapin, Asst. County Atty., Minneapolis, for respondent.

KEITH, Justice.

Chateau Community Housing Association, Inc. (Chateau) appeals from a judgment by the Minnesota Tax Court holding that Chateau's property was not exempt from real property taxation as of January 2, 1987, because it was not an institution of purely public charity within the meaning of Minn.Stat. section 272.02, subdivision 1(6) (1986). We affirm.

Chateau incorporated on January 11, 1972 as a nonprofit corporation under Chapter 317, Minnesota Statutes (1988). Its stated purpose was to provide decent quality, affordable housing for students and faculty at the University of Minnesota. Upon dissolution, its assets would not be available to private interests.

To effectuate its purpose, Chateau entered into a loan agreement with the United States of America whereby the United States agreed to buy bonds executed by Chateau totaling $3,200,000, the amount necessary to fully fund construction of a 127–unit college student housing facility. The bonds were to be repaid over 40 years with interest at three percent per year. At the time the loan was made, the government could have received a return of eight and five-eighths percent on federal monies spent.

The United States government purchased the bonds pursuant to its College Housing Program, which was established in part to provide low-interest loans to institutions for construction of housing for students or faculty members. 12 U.S.C. § 1749–1749c (repealed in 1986). The loan application required documentation of the need for housing; Chateau made the necessary showing.

Chateau constructed the housing facility in 1972–73. It consists presently of 15 efficiency apartments, 34 one-bedroom apartments, 48 two-bedroom apartments, 18 three-bedroom apartments and 12 four-bedroom apartments.

To be eligible for residence, an undergraduate student must be taking at least 12 quarter credits per year, a graduate student must be making satisfactory progress toward a degree, and a faculty member must be nontenured. Each applicant must consent to a credit check and pay a non-refundable $22 application fee. A tenant may be evicted for nonpayment of rent.

Rental rates are set by prorating the actual yearly operating expenses among the 127 units on a per square foot basis. The rates are not based upon the tenants' financial ability to pay. No rent scholarships are available. Chateau has received no direct contributions to subsidize its operations since its incorporation. Chateau, under its agreement with the U.S. Govern-

ment, is required to maintain a debt service reserve of $140,000 and has maintained additional reserves for maintenance and capital improvements. These reserves were acquired from the monthly rents.

Rental fees effective on January 2, 1987 ranged from $322 for the smallest efficiency apartment to $847 for a four-bedroom unit. Monthly rent included all utilities except telephone. Parking in the underground garage was extra at a cost of $33 per month. Chateau rental rates are similar to commercial rental rates in the area and higher than those charged at family housing cooperatives owned by the University.

Chateau paid real estate taxes on the land and building from 1972 through 1986. It first claimed exempt status as an institution of purely public charity in 1988 for the 1987 tax assessment.

 1. Chateau argues for the first time on appeal that the Minnesota Tax Court erred by applying strict rules of construction to its claim of exemption from real estate taxation. Chateau believes the more liberal rule of construction applied by this court in *State v. Carleton College*, 154 Minn. 280, 284, 191 N.W. 400, 402 (1923) should have been utilized. In that case, Carleton College was seeking a tax exemption as an academy, college or university under art. 9, section 1 (now art. 10) of the Minnesota Constitution, presently codified in Minn.Stat. section 272.02, subdivision 1(4). Chateau is neither an educational institution nor owned by an educational institution. It seeks its exemption not as a college, but as a purely public charity under Minn.Stat. section 272.02, subdivision 1(6). The Minnesota Tax Court correctly noted that taxation is the general rule and exemption the exception. Tax exemption statutes are strictly construed except Minn. Stat. section 272.02 subdivision 1(4) relating to educational institutions. *Camping and Educ. Found. v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969). Chateau has the burden of proving entitlement to the exemption. *Id.*

2. Applying appropriate rules of strict construction, the issue before us is whether

Chateau met its burden of proving, as of January 2, 1987, that it was a purely public charity and therefore entitled to a real estate property tax exemption.

Neither the Minnesota Constitution, article 10, subdivision 1, nor Minn.Stat. section 272.02, subdivision 1(6) defines what constitutes a purely public charity. This court has examined the following factors in deciding whether an entity qualifies as a purely public charity:

(1) [W]hether the stated purpose of the undertaking is to be helpful to others without immediate expectation of material reward;

(2) [W]hether the entity involved is supported by donations and gifts in whole or in part;

(3) [W]hether the recipients of the "charity" are required to pay for the assistance received in whole or in part;

(4) [W]hether the income received from gifts and donations and charges to users produces a profit to the charitable institution;

(5) [W]hether the beneficiaries of the "charity" are restricted or unrestricted and, if restricted, whether the class of persons to whom the charity is made available is one having a reasonable relationship to the charitable objectives;

(6) [W]hether dividends, in form or substance, or assets upon dissolution are available to private interests.

*North Star Research Inst. v. County of Hennepin*, 306 Minn. 1, 6, 236 N.W.2d 754, 757 (1975). Every factor mentioned need not be present before an institution qualifies for the tax exemption. *Worthington Dormitory, Inc. v. Commissioner of Revenue*, 292 N.W.2d 276, 281 (Minn.1980) (citing *Mayo Found. v. Commissioner of Revenue*, 306 Minn. 25, 36, 236 N.W.2d 767, 773 (1975)).

When reviewing a tax court decision, this court independently examines the facts in light of the concept of public charity. Where sufficient evidence exists upon which the tax court could reasonably base its conclusion, this court will uphold the tax court decision. *See City of Springfield v.*

*Commissioner of Revenue*, 380 N.W.2d 802, 805 (Minn.1986). Determination rests on the particular facts of each case. *Mayo*, 306 Minn. at 36, 236 N.W.2d at 773.

■ Chateau met factors one and six. Its purpose was to provide student and faculty housing on a nonprofit basis. Its articles of incorporation assured that neither dividends nor assets upon dissolution would be available to serve private interests. The tax court also found that Chateau satisfied factor four, ·which requires the charitable entity to receive no profit from gifts, donations or charges to users. The tax court reasoned that the reserve surplus amassed by Chateau was accumulated for sound business reasons and therefore did not alter the charitable character of the organization. *Cf. Mayo*, 306 Minn. at 37, 236 N.W.2d at 773–74.

The tax court found, however, that Chateau did not satisfy the remaining factors. Factor two requires the entity to be supported in whole or in part by donations or gifts, while factor three examines whether the recipients are required to pay for the assistance in whole or in part. Chateau argues that it satisfies both factors through the savings it realizes in interest payments on its 40 year bond debt of $3,200,000. The savings, based on the difference between the three percent interest rate Chateau pays versus the eight and five-eighths percent the government could have realized on monies spent in 1972, amounted to $144,000 in 1986.

First, Chateau considers the savings in interest payments a yearly donation or gift from the federal government, thereby meeting factor two. Second, this yearly savings enables Chateau to charge lower rents each year than would otherwise be possible, thereby requiring the tenants to pay for only a part of the services received.

Chateau supports its position by comparing itself to Rio Vista Nonprofit Housing Corporation (Rio Vista). This court held that Rio Vista, which constructed low-income housing, met the donation criterion because of the support received from ·the federal government in terms of *both* a guaranteed and funded low-interest con-struction loan *and* significant rent assistance. *Rio Vista Nonprofit Hous. Corp. v. County of Ramsey*, 277 N.W.2d 187, 190 (Minn.1979). Rio Vista, incorporated in 1971 as a nonprofit corporation under Chapter 317, Minnesota Statutes, constructed a 48–unit housing complex for low and moderate income families using a federally guaranteed loan granted under a Federal Housing Program known as "section 236." Rio Vista paid one percent interest on the loan, even though the bank rate was seven percent. The federal government paid the difference in interest payments directly to the bank. In addition to subsidizing interest on the loan, the federal government also subsidized the rent payments under a different federal program.

In contrast, Chateau receives no rent subsidies. Neither does the government pay any difference in interest rate to a private lending institution.

Chateau also compares itself to Worthington Dormitory, Inc., a non profit corporation providing student housing for students attending the Worthington Community College. We held the dormitory to be exempt from sales and use taxes. *Worthington*, 292 N.W.2d at 282. The nonprofit corporation in *Worthington* was established by local citizens. Purchase of land and mobile homes to be used for the student housing was fully financed by eight percent loans from local lending institutions. Seventy-three local citizens personally guaranteed the loans. Although rental income provided the chief source of income to Worthington Dormitories, each year the corporation also received an average of $10,000 in private charitable contributions which accounted for between 10 and 17% of the Foundation's annual income. Rental fees paid by students were not only less than cost for the housing, they were markedly lower than rents paid by students at state-operated dormitories. In addition, needy students could receive rent scholarships.

Chateau, to the contrary, charges rents comparable with private housing and considerably higher than comparable student cooperatives owned and operated by the

University. Rental fees cover 100% of the total operating costs. In addition, Chateau provides no scholarships or rent assistance to needy students; in fact, students are evicted for nonpayment of rent. *Cf. Rio Vista*, 277 N.W.2d at 191–92 (finding factor three difficult precisely because tenants could be evicted for nonpayment of rent and because rents paid covered a full 77% of the operating costs, but holding criterion satisfied because much of rent was actually paid by federal government in rent subsidies).

Finally, the fifth factor requires any class of restricted beneficiaries to have a reasonable relationship to the charitable objective. Intertwined with this factor is the question of whether the charitable objective lessens the burden of government. *See Mayo*, 306 Minn. at 36, 236 N.W.2d at 773. Chateau has restricted its beneficiaries to students and faculty as its purpose .is to provide affordable housing to those groups. The restricted class does have a reasonable relationship to its objective. *See Worthington*, 292 N.W.2d at 280 (noting that "[p]roviding low-cost housing to students without a view to profit in order to promote an educational facility seems to us to be a charitable purpose."). In addition, when Chateau first constructed the housing during a period of demonstrated need, it lessened the burden of government. As of January 2, 1987, however, unrefuted testimony indicated that sufficient and adequate housing existed. Therefore, Chateau no longer lessens the government's burden.

In conclusion, we find that Chateau has not proven it differs significantly from other nonexempt student housing which offers no financial assistance in payment of rent. The government loan at below market rates, standing alone, is insufficient to qualify the property as a purely public charity.

Affirmed.