## IN RE VALIDITY OF CLAIM OF ASSEMBLY HOMES, INC. v. YELLOW MEDICINE COUNTY.

140 N. W. (2d) 336.

February 11, 1966—No. 39,754.

*Norvell C. Callaghan,* for appellant.

*H. C. Lee,* County Attorney, for respondent.

*John M. Sullivan, Cole Oehler, J. Neil Morton,* and *Briggs & Morgan,* amici curiae.

THOMAS GALLAGHER, JUSTICE.

Petitioner, Assembly Homes, Inc., a nonprofit Minnesota corporation organized pursuant to L. 1951, c. 550, Minn. St. c. 317,[1] affiliated with the Minnesota District Council of the Assemblies of God Church, a religious association, instituted these proceedings under Minn. St. 278.01[2] in the District Court of Yellow Medicine County. Therein it

---

[1] Minn. St. 317.08, subd. 1, provides: "The articles shall be expressed in the English language, signed by each of the incorporators, and acknowledged by at least three of them."

Minn. St. 317.08, subd. 2, provides in part: "The articles of a corporation organized under this chapter shall state:

\* \* \* \* \*

"(3) that the corporation does not afford pecuniary gain, incidentally or otherwise, to its members."

Minn. St. 317.16, subd. 2, provides in part: "Without limiting or enlarging the provisions of subdivision 1, and unless the articles prescribe otherwise, a corporation has authority to:

\* \* \* \* \*

"(5) lease, encumber, convey or dispose of real and personal property \* \* \* ."

[2] Minn. St. 278.01 provides: "Any person having any estate, right, title, or interest in or lien upon any parcel of land, who claims \* \* \* that the

seeks judgment that under § 272.02(3)(6) [3] certain real estate in Clark-field, Yellow Medicine County, upon which it maintains a nursing home, is exempt from real estate taxes for the year 1963 in the sum of $3,076.64 as an institution of "purely public charity." No issue was presented as to whether this nursing home during the year in question was a public hospital also exempt under this statute, and this is not before us.

Petitioner's articles of incorporation provide as follows:

"ARTICLE II

"The purposes for which this corporation is formed and organized * * * are as follows, to-wit:

"a. To provide housing and related facilities and services for elderly families and persons on a non-profit basis.

"b. To provide housing and related facilities and services for mentally retarded children on a non-profit basis.

\* \* \* \* \*

"d. To acquire by gift or purchase, hold, sell, convey, assign, mortgage, or lease any property, real or personal, necessary or incidental to the provisions of housing and related facilities and services for elderly families and persons, or for mentally retarded children.

\* \* \* \* \*

"ARTICLE III [as amended].

"This Corporation is and shall be affiliated with the Minnesota District Council of the Assemblies of God, a religious, non-profit, Minnesota Corporation, and shall operate in a manner as to recognize the

---

tax levied against the same is illegal * * * or that the property is exempt from the tax so levied, may have the validity of his claim, defense, or objection determined by the district court of the county in which the tax is levied * * * ."

[3] Minn. St. 272.02 provides in part: "All property described in this section to the extent herein limited shall be exempt from taxation:

\* \* \* \* \*

"(3) All public hospitals;

\* \* \* \* \*

"(6) Institutions of purely public charity."

principles set forth in its Articles of Faith. This Corporation is not a subsidiary of the Minnesota District Council of the Assemblies of God.

## "ARTICLE V [as amended].

"That the corporation does not afford pecuniary gain, incidentally or otherwise, to its members. There shall be no personal liability of members for corporate obligations.

## "ARTICLE VIII [as amended].

"The total authorized number of shares of stock of this corporation shall be Twenty-five Thousand (25,000) shares, of no par value, all of which shall be known as no dividend, common stock. Each share of stock shall be entitled to one vote. Each shareholder is required to be a member in good standing with the Assemblies of God * * *. Stock issued by this Corporation, shall be issued to the shareholder for life or for such period as he is a member in good standing with the Assemblies of God * * *. In the event of death of the shareholder, such shares of stock shall simultaneously revert back to the corporation * * *.

## "ARTICLE XI.

"The assets of this corporation shall be dedicated to the charitable purposes above stated. In the event this corporation is dissolved and ceases to exist and ceases to use its property for purposes above stated, then the property shall revert to the Minnesota District Council of the Assemblies of God * * * with full authority to sell this property or use it * * * for the cause of Christ; and in the event the Minnesota District Council of the Assemblies of God * * * is unwilling or unable to accept the assets at the time of dissolution, it shall be distributed for exclusively charitable purposes."

Based upon evidence submitted at the hearing, the court found as follows:

"Petitioner was organized as a non-profit corporation under Chapter 550, Laws of Minnesota, 1951 and laws amendatory thereof * * *. The Articles were filed on October 20, 1961. Its organization was initiated by the Minnesota District Council of the Assemblies of God. The corporation is affiliated with the Minnesota District Council but is not a

subsidiary thereof. The articles authorize 25,000 shares of common stock of no par value and no dividends. The charter further provides that the corporation does not afford pecuniary gain to its members. As of the date of the hearing herein three shares had been issued to the three members of the board of directors and no other shares had been issued. The purpose of the corporation is to provide housing and related facilities and services for elderly persons and retarded children on a non-profit basis.

"* * * Under date of February 8, 1962 petitioner acquired title to the following described real estate in Yellow Medicine County, Minnesota, to-wit: Lots Five (5), Six (6), Seven (7) and Eight (8) in Block Two (2), and Lots One (1), Two (2), Three (3) and Four (4), except the south 66 feet thereof in Block Three (3), all in Burke's Addition to the Village of Clarkfield. Upon these premises is situated a nursing home. Since petitioner acquired the property it has been operating this nursing home.

"The written policy of petitioner is to admit any normal aged person as well as those chronically ill and invalids regardless of church connection. The petitioner retains the right to dismiss anyone who refuses to pay his bills. About three-fourths of their patients are paid for by county welfare or Veterans Administration. The rates charged are similar to the rates charged generally in the State of Minnesota by nursing homes. The written policy of the petitioner is that charges for nursing or custodial care are due each month in advance.

"The Clarkfield home showed a net operating profit in 1962 of $7,854.43, and in 1963 of $51.61. In 1962 there were donations to the Clarkfield home in the sum of $66.00. In 1963 petitioner operated five nursing homes and the petitioner received donations of $5,448.53, but no donations were allocated to the Clarkfield home. The Assemblies of God Church makes no contribution to the acquisition or cost of operation of the homes owned by the petitioner. The women's organization of said church makes some contribution to the petitioner."

Based upon such findings, the court determined that the real estate in question was not used as an institution of "purely public charity" and that, accordingly, the property was not exempt from taxation. In a memorandum made a part of the findings, the trial court stated:

"* * * [W]e are concerned here only with the question of whether the use and operation of the Clarkfield Nursing Home in 1963 was an institution of purely public charity * * *. There is no question but that the petitioner's operation of the home in Clarkfield is public within the definition laid down by the Supreme Court. It is also non-profit. However, the Court fails to see where there is any substantial charity. The Clarkfield home had a net operating profit in 1962 of $7,854.43 and in 1963 of $51.61. This profit in 1963 took into account $14,980.67 paid on interest, $388.13 amortization of bonds costs, and $4,454.20 depreciation on buildings and equipment. While the financial statement shows certain donations to the petitioners none were allocated to the Clarkfield home. There is no showing that in 1963 or prior thereto any persons were cared for at the Clarkfield home without payment of charges, unless it can be said that a charge made but which has not been collected and is carried as an account receivable constitutes free care. The only other indicia of charity so far as the Clarkfield home is concerned is the statement of the President of the petitioner that if it should happen that an applicant had no funds and there was no commitment by anyone to pay for his care, they would admit him. There was nothing to indicate that any corporate action had been taken to adopt such a policy or that any such situation had ever arisen so far as the Clarkfield home is concerned. The practice is that those who are not able to pay, that arrangements are made with the Welfare Board of the person's residence for payment, or with the Veterans Administration. There is no indication that any charity has been dispensed by the Clarkfield home in 1963, being the year in question.

"It is the opinion of the Court that for an institution to be classified as a purely charitable one the charity provided must be of some substantial amount in relation to the operation of the enterprise and that a mere token of charity is not sufficient. It must be understood that this holding applies only for the year 1963. Changes in income, methods of operation, and other factors may in subsequent years require a different conclusion."

Petitioner appeals from a denial of its motion for amended findings or a new trial.

■ In construing Minn. Const. art. 9, § 1, and Minn. St. 272.02(6), which exempt from taxation institutions of "purely public charity," we have held that "an institution organized for the purpose of rendering aid, comfort, and assistance to the indigent and defective, open to the public generally, conducted without a view to profit, and supported and maintained [in part] by benevolent contributions" falls within the category intended by such sections. State v. Bishop Seabury Mission, 90 Minn. 92, 95, 95 N. W. 882. Thus, in Christian Business Men's Committee of Minneapolis, Inc. v. State, 228 Minn. 549, 555, 38 N. W. (2d) 803, 809, the words "purely public charity" were referred to as follows:

"* * * The word 'purely' means 'wholly,' 'solely,' and 'exclusively' in such exemption provisions and qualifies the use that may be made of the institution's property. State v. Willmar Hospital, Inc. 212 Minn. 38, 41, 2 N. W. (2d) 564, 566. What is meant by a purely or exclusively charitable use of property is a direct, immediate, and actual application of the property itself to the purposes for which the charitable institution is organized. It is the direct and immediate use of the property, and not the use of the income therefrom, that is determinative of whether the property is used for tax-exempt purposes."

Again, in County of Hennepin v. Brotherhood of Church of Gethsemane, 27 Minn. 460, 8 N. W. 595, where the term "public hospital" was involved, this court held a public hospital exempt from taxation because in addition to being a public hospital it was held to be an institution of "purely public charity." Therein it was said (27 Minn. 462, 8 N. W. 596):

"* * * [A]n institution established, maintained and operated for the purpose of taking care of the sick, without any profit, or view to profit, but at a loss which has to be made up by benevolent contribution, is a charity. If, in addition to this, the institution is one the benefits of which the public generally are entitled to enjoy, it is then a purely public charity * * *; purely public, because its uses and objects are wholly public, * * *."

■ Nor does the fact that an organization claiming exemption as one of "purely public charity" operates at a profit derived from charges made

to its patients nullify its status as an institution of "purely public charity" if under its charter its operations are intended for the benefit of the public generally and thereunder none of such profits can be paid to stockholders or others. Thus, in State v. Browning, 192 Minn. 25, 29, 255 N. W. 254, 256, the rule as applied to public hospitals was expressed as follows:

"* * * [I]t was intended that a public hospital * * * should be operated for the benefit of the public in contradistinction to being operated for the benefit of a private individual, corporation, or group of individuals. * * * 'operated for the benefit of the public' means operated without an intent to make a private profit. It is not thereby meant that the institution must dispense charity or that it may not charge a fee for services rendered."

See, also, County of Hennepin v. Brotherhood of Church of Gethsemane, *supra;* Village of Hibbing v. Commr. of Taxation, 217 Minn. 528, 14 N. W. (2d) 923, 156 A. L. R. 1294; Fairmont Community Hospital Assn. Inc. v. State, 221 Minn. 107, 21 N. W. (2d) 243.

■ When the foregoing principles are applied to the undisputed facts here, it seems clear that the Clarkfield Nursing Home falls within the definition of institutions of "purely public charity." Its charter, its bylaws, its policy, and the conduct of its operations establish that it was not organized for private profit. It is open to the public and any profits derived from its operations go to the furtherance of its work as a nursing home. Its shareholders cannot receive dividends and hold stock for life and at the death of a shareholder his stock reverts to the corporation. Its charges for services are paid for by individual patients, by county welfare boards, and by the U. S. Veterans Administration. Private donations of money or services also contribute to its maintenance.

When all such factors are taken into consideration, it would seem clear that the Clarkfield Nursing Home was exempt from taxation during the year 1963 as an institution of "purely public charity."

Reversed with directions to enter judgment for petitioner.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.