BOZEMAN DEACONESS FOUNDATION, a Montana NON-PROFIT CORPORATION, PLAINTIFF AND RESPONDENT, *v.* ETHEL FORD, AS COUNTY TREASURER OF GALLATIN COUNTY, MONTANA, RALPH K. AAKER, RALPH ARMSTRONG AND LESLIE ANDERSON, AS COUNTY COMMISSIONERS FOR GALLATIN COUNTY, MONTANA, CHARLES W. SORENSON, AS COUNTY ASSESSOR OF GALLATIN COUNTY, MONTANA AND STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA, DEFENDANTS AND APPELLANTS.

No. 11257.
Submitted March 4, 1968. Decided April 23, 1968.
439 P.2d 915.

McKinley Anderson, Jr., William E. Gilbert, (argued), Bozeman, for defendants and appellants.

Morrow & Nash, James H. Morrow, Jr., (argued), Edmund Paul Sedivy, (argued), Bozeman, Alfred Dougherty, (argued), Helena, for plaintiff and respondent.

HONORABLE CHARLES LUEDKE, District Judge sitting in place of MR. CHIEF JUSTICE JAMES T. HARRISON, delivered the Opinion of the Court.

By this action Bozeman Deaconess Foundation, as owner and operator of Hillcrest Homes, a home for the aged, sought recovery of 1965 taxes assessed on approximately 21 acres of land occupied and used by that facility. Such taxes were paid under protest and in response to timely action taken, the district court gave judgment in favor of the Foundation, ordering refund of $12,825.85 and enjoining the assessment and collection of taxes in the future. The basis of the district court decision was that Hillcrest Homes, being for the care of the retired or aged or chronically ill, and organized and

operated on a nonprofit basis, qualified purely as a public charity which is tax exempt by statute. The defendant officials of Gallatin County have appealed.

Of first concern, prior to considering the statute involved, is the nature of the entity, Bozeman Deaconess Foundation, and the manner and purposes of its operation of Hillcrest Homes.

Bozeman Deaconess Foundation is a nonprofit Montana corporation, having no capital stock. Its purposes, as prescribed by its Articles, are to establish, equip, operate and maintain benevolent and charitable institutions without contemplating pecuniary gain or profit to its members. Specifically, it is authorized by Article II(a):

"To provide elderly or infirm persons on a nonprofit basis, with housing and hospitalization facilities and services, specifically designed to meet the physical, social and psychological needs of the aged, and contribute to their health, security, happiness and usefulness in longer living."

In furtherance of this specific purpose it has built Hillcrest Homes at a cost of approximately $2 million. $1,820,000 of this amount was borrowed from the Advance Mortgage Corporation and insured under authority of the National Housing Act through the Federal Housing Administration, with the balance coming from the Foundation and from individual Methodists in Montana. The government loan is secured by a mortgage on the Hillcrest Homes land.

Residents of Hillcrest Homes enter into lifecare contracts, under several types of plans, requiring the payment of occupancy fees ranging from $7,000 to $32,000 and single monthly maintenance charges of from $150 to $250, each depending upon the type of facility desired. Under the payments, as scheduled, the amount of income will not be sufficient to pay the mortgage indebtedness at the end of the mortgage period. Charitable donations will be required to make up the difference. Since inception, to date of trial, Hillcrest Homes had in-

curred net losses of $350,000. As organized, any profit, if any ever occurred, would not be distributed to its members, but be applied to further benevolent and charitable purposes.

The Foundation is oriented to the Methodist Church, which elects its trustees, and reversion of the property, when its intended use ceases, is to the Methodist Church. Hillcrest Homes, however, is open to applicants without regard to race or religion, the only requirements being that the applicant be of 62 years of age, unless he is married to one over 62, or is chronically ill. There are the occupancy and maintenance charges to be met, but some persons are admitted who are unable to pay the full charges and they receive financial assistance from the Foundation or other sources.

The issues in this case concern the following constitutional and statutory provisions: Section 2 of Article XII of the Montana Constitution specifies that property which the legislature may declare tax exempt and includes "* * * institutions of purely public charity. * * *."

Under this authorization, the legislature, since 1891, has granted an exemption in the same language stated in the constitution, i.e., to institutions of purely public charity. (See Section 84-202, R.C.M.1947).

Prior to 1965 uncertainty and difference, of opinion existed as to whether a home for the aged, organized and operated in the manner of Hillcrest Homes, could be considered an institution of purely public charity and therefore be free from property taxes. To clarify the matter, legislation was successfully sought in 1965, resulting in the passage of Chapter 85, Laws of 1965, which amended Section 84-202, by adding a provision as follows:

"* * * provided, the term 'institutions of purely public charity' as used in this act shall include organizations owning and operating facilities for the care of the retired or aged or chronically ill which are not operated for gain or profit * * *."

Appellants contend that this amendment is an unlawful attempt by the legislature to exand the exemptions allowed by the constitution through indirection and definition; in other words, that the definition given by the 1965 amendment declares as a purely public charity that which may not be so in fact.

The essence of their argument is that the constitution is not a grant of authority, but a limitation upon the powers of government so that legislation may exempt property enumerated but cannot go further or include any other (Cruse, et al. v. Fischl, 55 Mont. 258; 175 P. 878). That the constitutional provision must be strictly construed (Town of Cascade v. County of Cascade, et al., 75 Mont. 304, 243 P. 806) for taxation is the rule and not the exception. That the legislature cannot do indirectly that which is prohibited when done directly. (61 A.L.R.2d, pg. 1064).

The validity of these contentions in an appropriate case must be conceded. However, to support appellants' view that they are decisive of this case means it must be assumed that a facility such as Hillcrest Homes is not and cannot be classified as an institution of purely public charity except through the aid of the 1965 amendment. This assumption overlooks the possibility that it might be a purely public charity in fact; and, if so, that the validity or nonvalidity of the 1965 amendment is not put at issue and is not material. Only if the facts appearing in the record demonstrate that the Hillcrest Homes operation is not a qualifying charity is the constitutionality of the 1965 amendment put to test.

Resort to the record shows that all of the evidence submitted was offered by the Foundation and none of it is controverted by any evidence offered by appellants. In this circumstances the nonprofit status of the Hillcrest Homes facility, its alleged charitable character and the public nature of its benefits are all unchallenged. There is no showing made, nor any argument presented by appellants, that Hillcrest Homes

is not a charity because it charges fees, or is not public because of its requirements for applicants, or that its use as a home for the aged is not the exclusive use to which the property is devoted. It is left to the court to assume that the facts before it raise, as a matter of law, questions which verify that Hillcrest Homes may not be a purely public charity in fact, but is classified as such only because of the provisions of the 1965 amendment.

The authorities are generally in accord, and none are cited to the contrary by appellant that:

To qualify as a charity does not require that it have an exclusive relationship to the poor, and its charitable status is not destroyed by the charging of fees for admission and maintenance. The case of Fredericka Home for The Aged v. San Diego County, 35 Cal.2d 789, 221 P.2d 68, summarizes the modern view on these points:

"The concept of charity is not confined to the relief of the needy and destitute, for 'aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants.' [Citing case.] So the charge of fees by such an institution as a home for the aged will not necessarily prevent its classification as charitable if such sums 'go to pay the expenses of operation and not to the profit of the founders or shareholders,' for all persons may 'under certain conditions be proper objects of charity.' [Citing cases.]"

To similar effect see Assembly Homes, Inc., v. Yellow Medicine County, 273 Minn. 197, 140 N.W.2d 336. City of Richmond v. Richmond Memorial Hospital, 202 Va. 86, 116 S.E.2d 79; Topeka Presbyterian Manor, Inc. v. Board of County Com'rs, 195 Kan. 90, 402 P.2d 802.

These same authorities demonstrate that neither its public nature nor its standing as a charity is destroyed by the admission requirements imposed. Such requirements ap-

ply to all of a particular class and are consistent with charitable methods, motives and purposes. (15 Am.Jur.2d § 3, p. 9)

There has been no evidence presented, nor even any suggestion, that the land for which tax exemption is claimed, is not used exclusively for the care and attention of the aged.

It may be that appellants feel the standard of care, the excellence of accommodations, and the mode of life accorded by this facility, all reflected by the size of the occupancy and maintenance fees, and the physical plant and facilities available are inconsistent with the usual concept of charity. But "charity" to the law has a much broader meaning than that accorded it in common speech (15 Am.Jur.2d, p. 8). The scope of charity and the standards under which it is administered are not frozen by the past, but keep pace with the times and the new conditions and wants of society. (Zollman, American Law of Charities, pp. 121, 123). The case of Fredericka Home For The Aged v. San Diego County, supra, dealt with this situation in stating:

"* * * Here the record shows that plaintiff is ministering to its elderly residents at a charge which, although appreciable, is within the reach of persons in modest circumstances and is no greater than that which is required to augment the substantial amount which plaintiff is able to contribute to the accomplishment of its purposes."

In Hillcrest Homes we have a facility operating without profit or profit motive, making care available to the aged in good health and bad, under circumstances where the fulness of their life is promoted and imposition of the frailties of declining years are spared their children, relatives and the public authorities. Its property and facilities are devoted exclusively to those purposes. It is a purely public charity in fact and not merely by legislative definition. It qualifies for tax exemption under Section 84-202 without the aid of the 1965 amendment. In such case the constitutional issue raised by appellants is not appropriate. The constitutionality

of a statute must be tested in light of the facts appearing, not in light of facts which might exist but do not. (Baker Sales Barn, Inc., v. Montana Livestock Commission, 140 Mont. 1, 367 P.2d 775).

The Foundation has carried the burden of bringing itself within the terms of exemption from taxation as to the land embraced within the Hillcrest Homes operation, both as to the time in question and as to the future so long as its ownership and mode of operation are unchanged.

Judgment affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.