JUSTICE SHEEHY,
dissenting:
The majority take a very narrow view of the charitable exemption from taxation provided by our State Constitution and our statutes. The majority interpretation of that exemption gives it a twist that will certainly be a troublemaker in the future.
First, we must recognize that the constitutional and legislative language is imprecise. Montana Constitution, Art. VIII, § 5(l)(b), provides:
“(1) The legislature may exempt from taxation:
“... (b) Institutions of purely public charity, hospitals and places of burial not used or held for private or corporate profit, places for actual religious worship, and property used exclusively for educational purposes.”
With regard to the meaning of the constitutional exemption for purely public charity institutions, the intent is open to argument. While other clauses of the constitutional permission for tax exemptions refer to property of the entities, with respect to charity organizations it merely exempts “institutions.” It could be argued and some members of this Court think that the exemption is only to the “institution” as an entity, and not to the property of the institution. That position is akin to arguing that the taxation exemption is applicable to an abstraction, the entity, and not to its property, which has a physical existence.
The majority opinion rejects that argument, holding that the Constitution and the legislature intended “institutions” to mean *479 property or place and not the entity itself. That position, of course, is correct. Having reached the proper interpretation of the imprecise language, however, the majority then reverse their logic, holding that the entity’s property is taxable. On the one hand, the majority hold that the property of an institution is what is intended to be exempted though held by a purely public charity; on the other hand, they take away that exemption by holding the property of such an institution is taxable.
What that position means for other property held by purely public charities is threatening. One can think of examples. If a donor gives shares of corporate stock to a purely public charity, and the charity holds the stock for income to accomplish its purposes, under the logic of the majority the stock itself is taxable as property, unless other statutory provisions intervene. The donor of a bed to a purely public charity, to be used by the charity to acquire income for the charity’s purposes would find the bed also taxable, although in Bozeman Deaconess Foundation v. Gallatin County, (1968), 151 Mont. 143, 439 P.2d 915, this Court held that such property was not taxable. (Of course, a bed in a charity organized for the care of the retired, the aged or the chronically ill is specifically exempted under § 15-6-201(2)(a), MCA, but what of a bed used by a charity to gain funds for the homeless or needy transients?)
Judge McCarter, sitting in the District Court in this case, saw the issue quite clearly. She said: “The question is whether Steer, Inc. is a purely charitable organization pursuant to § 15-6-201(l)(e), MCA. Necessarily, the definition of a purely charitable organization is crucial to answering this question.” Such a simple and direct statement of the issue, if followed by the majority, would have led to a correct conclusion. If the institution is truly a purely charitable organization, it and its property are entitled to exemption from taxation as intended, I submit, by the constitutional framers and the legislature.
The fact that the charity holds its property to gain income which in turn is used for charitable purposes should not destroy the exemption. This Court indicated that solution in Bozeman Deaconess Foundation v. Gallatin County, supra, 151 Mont. at 148, 439 P.2d 915. This Court said:
“To qualify as a charity does not require that it have an exclusive relationship to the poor, and its charitable status is not destroyed by the charging of fees for admission and maintenance. The case of *480 Fredericka Home for the Aged v. San Diego County, 35 Cal.2d 789, 221 P.2d 68, summarizes the modern view of these points:
“ ‘The concept of charity is not confined to the relief of the needy and destitute, for “aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent a purpose as the relief of their financial wants.” (Citing case.) So the charge of fees by such an institution as a home for the aged will not necessarily prevent its classification as charitable if such sums “go to pay the expenses of operation and not to the profit of the founders or shareholders,” for all persons may “under certain conditions be proper objects of charity.” (Citing cases.)’
“These same authorities demonstrate that neither its public nature nor its standing as a charity is destroyed by the admission requirements imposed. Such requirements apply to all of a particular class and are consistent with charitable methods, motives and purposes.”
No one can demonstrate for me a substantial difference between charging fees by an institution in its home for the aged (which fees go to pay the expenses of operation and not to the profit of the founders or the shareholders) and the holding of property by such a charitable organization to gain income, which in turn “go[es] to pay the expenses of operation and not to the profit of the founders and shareholders.” Indeed, there is no difference. Bozeman Deaconess, supra.
The proper rule in this case should be that once an institution is shown to be one of purely public charity, without dispute, then its property, of whatever kind, is not subject to taxation under the exemption granted by the Constitution and our legislature.
On another point, the Department of Revenue has argued strenuously that the purpose of Steer, Inc. in the use of its property in this case was to disseminate its religion, and that therefore the plan violated the First Amendment if a tax exemption were granted. The majority opinion is silent on this subject, and I hope by implication, quite properly, rejects that contention. The Department argued that dissemination of religion was the “principal” objective of Steer, Inc. in its plan. STAB, in its Finding of Fact No. IX stated that: “each missionary recipient has as its principal purpose the dissemination of evangelical gospel and principles.” On that basis, the Department *481 claimed that the First Amendment was violated. The District Court disagreed with the Department’s contention, pointing out that there was substantial testimony from Steer, Inc. about how its funds were used by its member organizations and that charitable purposes other than the dissemination of religion were involved. There is no reason to deny the exemption even though the “charity may be devoted to bringing people into religious influence,” as long as the hinds are truly used for what all recognize as charitable purposes not necessarily bound by religion, the aid of the poor, the homeless, the aged, the ill, and the misfortunate. Flathead Lake Methodist Camp v. Webb (1965), 144 Mont. 565, 399 P.2d 90.
Another argument of DOR of no merit is its contention that the tax exemption should not be allowed if the charitable activities take place out of Montana. DOR is in the farcical position of claiming a parochial reason for its anti-parochial stance.
It is my view that the District Court should be affirmed.