IN RE PETITION OF JUNIOR ACHIEVEMENT OF GREATER
MINNEAPOLIS, INC., FOR REAL ESTATE TAX
EXEMPTION v. STATE.

135 N. W. (2d) 881.

June 18, 1965—No. 39,529.

*George M. Scott,* County Attorney, and *Edward P. Dietrich* and *David E. Mikkelson,* Assistant County Attorneys, for appellant.

*Vennum, Newhall, Ackman & Goetz, Thomas Vennum,* and *John A. Forrest,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment granting real estate tax exemption in proceedings brought by petition under Minn. St. 278.01. The issue is whether the real estate involved is being used as a purely public charity or as an academy or seminary of learning.

From the stipulation of facts it appears that the property is the site of a brick, two-story building and has an assessed valuation of $22,590. It is owned by petitioner, Junior Achievement of Greater Min-

neapolis, Inc., a corporation organized to provide a place of training for young people between the ages of 15 and 19. Their training is conducted and supervised by volunteer adult advisers. The method of education involves a "learn by doing" process to develop understanding of the relationships and functions of the American free enterprise system. During the course of a school year about 50 projects are undertaken, each of which is a miniature business enterprise. Each project involves the organization, operation, and dissolution of a business. From 15 to 25 young people and 3 adult advisers work on each project. The young people act and work as shareholders, directors, officers, and employees of the particular project in which they participate. They plan the production, promotion, and sale of the product; and, at or near the end of each school year, wind up the affairs of the project. Each project is operated as an actual business on a very limited basis. The activities of the participants involve an examination of various aspects of a business enterprise, including elements of wages, costs, and accounting. The projects in which the participants engage involve production and sale of various articles, including textiles, plastics, steel and wood products, and food. These projects are sponsored by business firms of national standing which lend their personnel for the purpose of counseling and training the participants. The young people come from the public, private, and parochial schools of Minneapolis and its surrounding areas. The program is available to all, males and females alike, between the specified age limits.

■ Since taxation is the rule and exemption is an exception, there is a presumption that all property is taxable.[1] If there is an exemption, it must be found in some provision of the law. The state contends that the property is not exempt under any of the provisions of the constitution or statute. The pertinent provisions are:

Minn. Const. art. 9, § 1. "The power of taxation shall never be

---

[1]Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803; State v. Northwestern Preparatory School, 249 Minn. 552, 83 N. W. (2d) 242; 18 Dunnell, Dig. (3 ed.) § 9150(1); St. Peter's Church v. County of Scott, 12 Minn. 280 (395); State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882.

surrendered, suspended or contracted away. Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes, but public burying grounds, public school houses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, and public property used exclusively for any public purpose, shall be exempt from taxation, * * *."

Minn. St. 272.02. "All property described in this section to the extent herein limited shall be exempt from taxation:

\* \* \* \* \*

"(4) All academies, colleges, and universities, and all seminaries of learning;

\* \* \* \* \*

"(6) Institutions of purely public charity;

"(7) All public property exclusively used for any public purpose."

The state contends that because of the nature and functions of the activity, it is neither an academy or seminary of learning nor a purely public charity within the provisions of law above cited.

■ We must agree with the state that petitioner's property is not an "academy or seminary of learning" within the definitions of those terms as expressed in our decisions. We have considered exemptions from taxation as they relate to various schools. The most recent authority is State v. Northwestern Preparatory School, 249 Minn. 552, 83 N. W. (2d) 242, in which we reviewed numerous decisions involving the same and related questions. We there pointed out that an educational institution may teach a variety of useful subjects and yet not be an academy or seminary of learning entitled to tax exemption. To qualify for such an exemption it is necessary that a substantial part of the branches of learning offered by a publicly supported school must be furnished by the institution seeking the tax exemption before it qualifies therefor. We stated in that case that the exemption is available (249 Minn. 558, 83 N. W. [2d] 246)—

"* * * only if its regular curriculum of instruction is a reasonable substitute for the usual program of courses pursued by a student en-

rolled at a comparative educational level in the public system, *and to be a reasonable substitute* it must appear (1) that the required curriculum (though it may embrace fewer courses than are usually offered in the public system) embraces a sufficient variety of academic subjects to give the student a general education and (2) that the units of educational training are readily assimilated as an integral part of the public school system in that each essential subject is taught in such a comprehensive and thorough manner that, if a student were transferred to the same grade or level of instruction in the public system, he would receive full credit for his work in that subject."

Obviously, the course of learning provided by petitioner does not come within the foregoing rule.

■ The Junior Achievement program, however, does not pretend to meet the test of an academy or seminary of learning as expressed by our decisions. It is nevertheless a school in that it provides a place where young people are educated and given an opportunity to acquire skills and experience not provided in public schools. It serves a public purpose through a program which supplements the student's general education in much the same way that the 4-H program benefits, trains, and educates rural youth.

Because of the nature of the things it does and the fact that it is supported through private contributions, we must consider its character as "an institution of purely public charity" within the meaning of Minn. St. 272.02(6). In Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803, we considered a case in which the plaintiff organization was a nonprofit corporation organized to promote the study of the Bible and spread the Christian gospel by radio, evangelistic services, and prayer meetings. This organization owned and maintained a building in Minneapolis which the state contended was subject to real property taxes. The organization provided on the premises a youth center and gathering place for clubs, societies, church organizations, and related social services. The trial court found that the property was not used for church purposes nor was it a purely public charity. On appeal we took a contrary view, holding that the general purpose of the organization was to promote the moral and educational

welfare of youth "by bringing them under religious influences for the improvement of their characters and for the stimulation in them of higher ideals of life and conduct." 228 Minn. 555, 38 N. W. (2d) 809. In concluding that it was an institution of "purely public charity" exempt from taxation, we said (228 Minn. 560, 38 N. W. [2d] 812):

"* * * The maintenance of a youth center where young people may gather for recreation in a wholesome atmosphere undoubtedly is a contribution to the public good."

The legal meaning of the word "charity" has a broader significance than in common speech and has been expanded in numerous decisions.[2] Charity is broadly defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons "by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."[3]

But it is not safe to say as a universal rule that any gift which tends to promote man's well-being is a charity. Whether the property is exempt is a fact question which necessarily turns upon the particular use to which it is devoted; the exemption accordingly depends upon the particular facts in each case, and the burden of proof rests with the petitioner who seeks the exemption.[4] An interesting discussion of this general subject is found in Boston Chamber of Commerce v. Assessors of Boston, 315 Mass. 712, 54 N. E. (2d) 199, 152 A. L. R. 174, where it was held that the Boston Chamber of Commerce,

---

[2]County of Hennepin v. Brotherhood of the Church of Gethsemane, 27 Minn. 460, 8 N. W. 595; State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882. Numerous decisions which dwell upon the meaning of the term are gathered in 12 A. L. R. (2d) 856; 21 A. L. R. 946; 62 A. L. R. 328; and 81 A. L. R. 1453 (exemption from taxation of a Y.M.C.A. or Y.W.C.A.).

[3]15 Am. Jur. (2d) Charities, § 3.

[4]Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803; School of Domestic Arts and Science v. Carr, 322 Ill. 562, 153 N. E. 669.

which was organized to promote business and trade relations but was motivated by self-interest of its members, was not a "charitable institution" whose property was exempt from taxation. The opinion pointed out that the Boston Symphony Orchestra had been held to operate in such a manner in relation to the sale of tickets and other matters that its standing as a charity was doubtful and it could not obtain exemption, while, on the other hand, a trust to promote the best interests of "sewing girls" in Boston and a wood yard used in connection with a home for discharged prisoners were exempt. The court said (315 Mass. 717, 54 N. E. [2d] 202, 152 A. L. R. 179):

"* * * It has come to be recognized that new objects must be added in order to comprehend within the class of charities a wide variety of gifts which represent a wholly generous and unselfish devotion of wealth to uses which benefit the public generally or whole classes of the public and from which the donor derives no personal advantage."

The authority which best illustrates the designation of a school which provides training in practical skill as a "charitable institution" is found in School of Domestic Arts and Science v. Carr, 322 Ill. 562, 153 N. E. 669. That case involved property of a nonprofit corporation used in connection with the teaching of "cooking, serving, and other branches of domestic arts and science" in the training of young women to cook for restaurants and institutions. Scientific and nutritive values of foods were also taught, as well as the skill of sewing. The court there considered a statute exempting from taxation property of a "beneficent and charitable" organization when the property is actually used for beneficent or charitable purposes. The court observed that the words "beneficent" and "charitable" are synonymous and went on to say that (322 Ill. 569, 153 N. E. 671) "almost anything that tends to promote the well doing and well being of social man" may be characterized as a charitable use. The benefit conferred upon the public and the consequent relief of the burden upon the state to care for and advance the interest of its citizens are the fundamental grounds upon which exemption of charitable institutions is based. The Illinois court concluded that the teaching and training provided by the institution were a benefit to the students, making it possible for them to earn a living

and thus indirectly benefited the public. It held that the organization was a charitable one and that the property involved was used exclusively for charitable purposes and was therefore exempt.

■ We think that the stipulation and record as a whole support the finding of the trial court that the property involved here is used for a purely charitable purpose. The characteristics which distinguish a charitable institution are present here. The activity conducted on the premises is made possible by gifts and contributions dedicated to the general public use applied consistently with existing law for the benefit of an indefinite number of persons by directing their minds and interests to an examination of the nature of our political and economic system and how man works and lives in a free democratic society. In accomplishing this purpose Junior Achievement is not only contributing to the betterment of society but lessening the burdens of government and making a contribution to the public good. Moreover, the activity is a deterrent to unsocial behavior and provides a useful and constructive activity for young people. As the trial court observed, "The youngster who becomes a part of the Junior Achievement program is hardly likely to find his name on the police blotter."

The charitable character of the project is emphasized by the fact that it is supported by the contributions in time and money of those who are dedicated to the education of young people. No profit motive is to be found in the operation of the activity, nor do we find any element of self-interest which prompts the support of those who make the program possible.

We accordingly conclude that the trial court was correct in determining that the property involved in this proceeding is devoted to use as a "purely public charity" and entitled to exemption under the provisions of Minn. Const. art. 9, § 1, and Minn. St. 272.02.

Affirmed.