**AMERICAN ASSOCIATION OF CEREAL CHEMISTS, et al., Relators,**

v.

**COUNTY OF DAKOTA, Respondent.**

No. C4–89–1650.

Supreme Court of Minnesota.

May 11, 1990.

Amy D. Grady, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, and Albert D. Levin, St. Paul, for relators.

Kenneth A. Malvey, Dakota County Atty., Hastings, for respondent.

WAHL, Justice.

The issue presented in this case is whether the property used as the headquarters building of the American Association of Cereal Chemists and the American Phytopathological Society is exempt from real property taxes either as an institution of purely public charity under Minn.Stat. § 272.02, subd. 1(6) (1988), or as a seminary of learning under Minn.Stat. § 272.02, subd. 1(4) (1988). The tax court held the property was not exempt from real property taxes. Relators have petitioned for review of that decision by certiorari. We affirm.

Neither party disputes the tax court's findings of fact. Both relators, American Association of Cereal Chemists (AACC) and American Phytopathological Society (APS), are nonprofit corporations classified as tax-exempt scientific organizations by the Internal Revenue Service. Together they built a joint headquarters building in Eagan, Minnesota, relying at least in part on voluntary corporate and individual contributions to their building fund. This headquarters is the property subject to the taxes at issue here. AACC and APS have been located in the Eagan headquarters building since 1971. From 1971 until 1987, they paid real property taxes. They now claim exemption from the 1988 assessment.

The purpose of AACC has been to encourage and advance scientific and technical research in cereals and their products, to study analytical methods used in cereal chemistry and development, to adopt standards, to promote scientific cooperation in the field of cereal knowledge, to maintain high professional standards in the Association as conditions of membership, and to encourage recognition of the scientist in the development of cereal industries. The objective of APS as provided in the articles of incorporation is to promote investigation and advancement in plant pathology and cooperation among plant pathologists, to present and discuss results of research and investigation, to consider ways of promoting research, to cooperate with other scientific organizations, and to publish contributions to plant pathology.

Both organizations publish technical literature for their respective professions and hold meetings for presentation and discussion of research papers and reports. All scientific information is disseminated to the general public, although because the information is technical in nature, not everyone can make use of it. AACC and APS do not conduct research of their own. AACC presents approximately 12–18 short courses per year to train new science graduates, while APS offers workshops and training sessions to train college teachers in new areas of science and new laboratory techniques. Both organizations provide the most far-reaching educational thrust through their publications. They provide career guidance to schools and also provide assistance to universities developing specialized courses or appropriate curriculum in their respective areas.

Membership in APS is open to anyone, whereas AACC places educational restrictions on those members working in technical areas. AACC has approximately 3,650 members, while APS has about 4,300. Both organizations include government employees in their membership. AACC membership includes 78% in industry, 9% in government, 11% in academic institutions and 2% other, whereas APS membership includes 70% from academia, 20% from government, and 10% from industry or consulting.

Total income for both AACC and APS consists of dues, subscriptions and sales. Journal and book sales account for 51% of AACC's income and 70% of APS's, while meeting fees account for 28% of AACC's and 9% of APS's incomes. Contributions have come mainly from university and government sources rather than industry. Most years of operation have produced a surplus for both organizations. Pecuniary gain to officers and members is prohibited and any assets remaining upon dissolution will be distributed to similar corporations.

■ AACC and APS claim a tax exemption from real property taxes under the

Minnesota Constitution, art. 10, § 1, and Minnesota Statutes § 272.02, subds. 1(4) and (6) which provide property tax exemptions for all seminaries of learning and institutions of purely public charity. Exemptions must be strictly construed, however, for the general rule is that all property is taxable and the burden of proof is on the taxpayer. *Chateau Community Housing Ass'n v. County of Hennepin,* 452 N.W.2d 240, 242 (Minn.1990). These taxpayers are classified as section 501(c)(3) income tax-exempt scientific organizations by the IRS and are exempt from the payment of Minnesota income tax. Exemption from income taxes as a nonprofit corporation is not determinative of whether the corporation is exempt from real property taxes. *See Rio Vista Non–Profit Housing Corp. v. Ramsey County,* 277 N.W.2d 187, 189 (Minn.1979).

1. Relators argue first that the tax court erred in concluding that their property is not exempt from real property taxes as an institution of purely public charity under Minn.Stat. § 272.02, subd. 1(6). The findings of fact, they contend, establish that AACC and APS meet all of the factors, as set out in *North Star Research Inst. v. County of Hennepin,* 306 Minn. 1, 236 N.W.2d 754 (1975), used by the tax court to assess whether the use of the property could be considered a purely public charity. These factors include: (1) whether the stated purpose of the undertaking is to be helpful to others without immediate expectation of material reward; (2) whether the entity involved is supported by donations and gifts in whole or in part; (3) whether the recipients of the "charity" are required to pay for the assistance received in whole or in part; (4) whether the income received from gifts and donations and charges to users produces a profit to the charitable institution; (5) whether the beneficiaries of the "charity" are restricted or unrestricted and, if restricted, whether the class of persons to whom the charity is made available is one having a reasonable relationship to the charitable objectives; (6) whether dividends, in form or substance, or assets upon dissolution are available to private interests. *North Star, Id.* at 6, 236

N.W.2d at 757 (1975). The factors are c ⱼ a guide, however, and each case must decided on its own facts. *Mayo Foundation v. Commissioner of Revenue,* 306 Minn. 25, 36, 236 N.W.2d 767, 773 (1975). "The tendency of our decisions has been to sustain exemption where these traditionally 'charitable' objectives are being furthered * * * and so long as the undertaking is not a subterfuge by which the needs of a select and favored few are accommodated." *North Star,* 306 Minn. at 6, 236 N.W.2d at 757.

■ Our examination of the factors considered by the tax court must be in light of the standard of review requiring us to uphold the tax court decision where sufficient evidence exists for the tax court to reasonably reach the conclusion it did. *City of Springfield v. Commissioner of Revenue,* 380 N.W.2d 802, 805 (Minn.1986).

■ No one disputes that factors one and six are met. The tax court found that the organizations minimally satisfied factor two: the entity is supported by donations and gifts in part. Relators argue that AACC and APS fully satisfied factor two because (1) contributions and endowments were received yearly and (2) those individuals who publish in AACC and APS journals have given the organizations noncash contributions through their research and writing efforts. Neither the minimal .1% of total income provided by endowments nor the research efforts of authors can be considered donations that fully satisfy the second factor.

Factor three asks whether the recipients of the charity are required to pay for the assistance in whole or in part. The tax court noted that the recipients of the benefits of AACC

> are those who pay the dues, purchase the journals and educational materials, and participate in the educational courses for which market rates are charged * * *. It appears that the primary recipients of the "charity" are the members of the organization * * *.

Tax Ct. Memorandum, No. C0–88–3510 at 27 (July 18, 1989). Because the recipients

pay for the benefits, the tax court found that AACC and APS failed the requirement of factor three. AACC and APS argue, to the contrary, that it is the general public, colleges and universities, and the government who comprise the beneficiaries, because the publications enhance and advance knowledge "affecting the fields of forestry, agriculture, and cereal processing, and this knowledge benefits all of mankind in the most basic way." Those groups comprise indirect beneficiaries, however, rather than direct ones.

Factor four examines whether the entity makes a profit from the gifts, donations and charges to users. The tax court found that profits are being realized most years, based on income derived from membership fees, sales of publications and miscellaneous sources, although any profits realized are used for furthering the objectives of the organizations in future years and not for private gain. Realization of a profit is not decisive, however, for exemption has been granted in spite of profits. *See, e.g., SHARE v. Commissioner of Revenue,* 363 N.W.2d 47, 51 n. 3 (Minn.1985); *Mayo,* 306 Minn. at 37, 236 N.W.2d at 773–74 (acknowledging that increase in net worth does not necessarily deprive entity of tax exempt status as purely public charity when profit has not been motive); *Assembly Homes, Inc. v. Yellow Medicine County,* 273 Minn. 197, 203–04, 140 N.W.2d 336, 340–41 (1966) (granting real estate tax exemption status to nursing home in spite of operation at profit).

Finally, factor five asks whether the beneficiaries of the charity are restricted or unrestricted, and if restricted whether the restricted class has a reasonable relationship to the charitable objectives. The tax court found that because AACC had certain educational and vocational requirements for membership, the general public is excluded from membership.

In summary, the tax court found that factors one, four and six were met, factor two was minimally met and factors three and five were not met. The evidence was sufficient to uphold the tax court's conclusion.

There is no doubt that the purposes and work of both AACC and APS are laudable. Encouraging the advancement of scientific knowledge of cereal chemistry and technology and of plant pathology does eventually benefit the general public. But the ultimate issue is whether entities whose major activities are dissemination of scientific information fit the concept of a "purely public charity." Sufficient evidence existed for the tax court to reasonably conclude that AACC and APS are not "purely public charities." We affirm that decision and hold that because relators failed to meet their burden of proving that they were purely public charities, their real property is not exempt from taxation under Minn. Stat. § 272.02, subd. 1(6).

■ 2. Relators argue in the alternative that they are exempt from real property taxes as a seminary of learning under Minn.Stat. § 272.02, subd. 1(4). In order to qualify as a seminary of learning, "a substantial part of the branches of learning offered by a publicly supported school must be furnished by the institution seeking the tax exemption * * *." *Junior Achievement of Greater Minneapolis, Inc. v. State,* 271 Minn. 385, 388, 135 N.W.2d 881, 884 (1965).

Both AACC and APS offer workshops or short courses, but those offerings are restricted to the limited areas the organizations promote: cereal chemistry and technology for AACC and plant disease detection and control for APS. As the tax court noted in its Memorandum:

We agree that the primary purpose of the AACC and the APS is educational in nature. The publications provided by both societies, the textbooks and the symposiums and opportunities for presentation of research papers further the purpose of educating members and the general public in issues regarding cereal chemistry and plant pathology. * * *

[According to the standard enunciated in *Junior Achievement,* however,] [i]t is obvious that the petitioners do not offer a curriculum which embraces a sufficient variety of academic subjects to provide a general education or that the units of

educational training are readily assimilated as an integral part of the public school system. The courses and seminars conducted by petitioners are of a highly technical nature and do not involve a variety of academic subjects that would provide a general education.

The undisputed findings of fact support the tax court's conclusion. Thus, we hold that relators failed to meet their burden of proving they are seminaries of learning and are, therefore, not exempt from taxation under Minn.Stat. § 272.02, subd. 1(4). The decision of the tax court is affirmed.

Affirmed.