**WHITE EARTH LAND RECOVERY PROJECT, Respondent,**

v.

**COUNTY OF BECKER, Relator.**

No. CX–95–1161.

Supreme Court of Minnesota.

March 8, 1996.

Joseph A. Evans, Becker County Attorney, James D. Sinclair, Asst. Becker County Attorney, Detroit Lakes, for relator.

John P. Mandler, Minneapolis, for respondent.

## OPINION

STRINGER, Justice.

We consider the real estate tax status of 715 acres of land in Becker County purchased by the White Earth Land Recovery Project (the Project) in 1992 as a part of a program of the Project to reacquire tracts of reservation land historically belonging to Anishinabe people but later sold off. The tax court held that based upon the corporate purpose, structure, and operations of the purchaser, the current use of the land and its intended future use, it was entitled to tax-exempt status. We affirm.

The Project is a nonprofit corporation that has been granted federal income tax exemption under section 501(c)(3) of the Internal Revenue Code. The Project's Articles of Incorporation provide:

> This corporation is organized and shall be operated exclusively for religious, charitable and educational purposes, and in connection therewith, to conserve and maintain the cultural and natural resources in areas of northern Minnesota currently or historically occupied by members of the Mississippi, Pillager, Pembina and other Chippewa bands, to promote and protect the use of such lands for the housing, economic development, religious and cultural needs of such bands, and to educate members of such bands and the general public about the history and uses of such lands.

The White Earth Reservation consists of 837,000 acres of land, 90% of which has not been owned by Indians since the beginning of the twentieth century. Approximately 5,000 members of the White Earth Reservation live on the reservation, and 17,000 live elsewhere. The 5,000 members living on the reservation comprise about half of the residents of the reservation and most are poor; there are high levels of unemployment among the resident members, and the Indians living on the reservation are generally poorer than the non-Indians living there.

The goal of the Project is to restore the Anishinabe culture among the Anishinabe community, in part through regaining ownership of the reservation lands. In addition to land recovery, the Project's programs include educating the Anishinabe in their cultural heritage, restoring the ecology to what it was before white settlers arrived, restoring burial grounds, and producing commercially maple sugar and raspberries. In 1992, the Project received donations of $361,000. Similarly, in 1993, $249,000 of the Project's $278,000 income was derived from donations made by foundations and churches. The Project is a membership organization, having about 150 fee members who pay less than $10 per year in membership fees and have the right to vote for directors of the Project. The Project also has 4,500 supporting members who give $25 or more annually. No dividends are paid to private interests and no benefits are directed back to donees except nominal privileges in the Project's programs such as discounts on raspberry picking and enrollment preferences in language programs.

In 1992 the Project reported that its early research and education projects had grown into an integrated campaign, advocacy, education, and land acquisition program. It acquired some 700 acres of land previously owned by non-Indians and developed community-based education programs to teach Ojibwa traditions and promote understanding of ecological issues of reservation land. It also restored a burial site. Similarly, in 1993 the

year-end report indicated additional land recovery and a new education program to recover the Ojibwa language. Other 1993 activities of the Project included preparation of a proposal entitled a "Sustainable Communities Proposal" to study agriculture, forestry, and energy, and a housing program to "allow for truly sustainable ways of living for willing Anishinabeg people."

The property at issue was purchased by the Project in 1992 and consists of open land, marsh, brushland, and hardwood forest. The Project planned to restore the property to its original ecology and to use it for environmental education. The Project has used the property both to produce medicinal plants, native corn, and potatoes and as a teaching site for education programs.

The Minnesota Tax Court concluded that because the Project is an institution of purely public charity, and the property is used to accomplish the Project's charitable objectives, it is exempt from real estate taxes under the Minnesota Constitution and Minn. Stat. § 272.02, subd. 1(6) (1994). We give great deference to determinations of the tax court, affirming where reasonably supported by the evidence. *Chateau Community Hous. Ass'n, Inc. v. County of Hennepin*, 452 N.W.2d 240, 242 (Minn.1990).

■ All property is presumed taxable, and the burden is on the party seeking tax-free status to prove entitlement to the claimed exemption. *Junior Achievement of Greater Minneapolis, Inc. v. State*, 271 Minn. 385, 387, 390, 135 N.W.2d 881, 883, 885 (1965). The Minnesota Constitution provides that "[t]axes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes, but * * * institutions of purely public charity * * * shall be exempt from taxation except as provided in this section." Minn. Const. art. X, § 1. Further, Minn.Stat. § 272.02, subd. 1, provides generally that institutions of "purely public charity" are exempt from taxation.

■ This court defined "charity" in *Junior Achievement*:

The legal meaning of the word "charity" has a broader significance than in common speech and has been expanded in numerous decisions. Charity is broadly defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons "by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

271 Minn. at 390, 135 N.W.2d at 885 (footnotes omitted). Ten years later, in *North Star Research Institute v. County of Hennepin*, 306 Minn. 1, 236 N.W.2d 754 (1975), we set forth the following factors as guidelines for determining whether an institution qualifies as a purely public charity for purposes of a property tax exemption:

(1) whether the stated purpose of the enterprise is to help others without immediate expectation of material reward;

(2) whether the organization seeking exemption is supported, in whole or in part, by donations and gifts;

(3) whether recipients of the charitable benefits are required to pay, in whole or in part, for the assistance they receive;

(4) whether the income received from gifts and donations and charges to users produces a profit for the organization;

(5) whether the beneficiaries of the charity are restricted or unrestricted and, if restricted, whether the class of persons to whom the benefits are available has a reasonable relationship to the charitable objectives; and

(6) whether dividends, in form or in substance, or assets upon dissolution are available to private interests.

*Id.* at 6, 236 N.W.2d at 757.

At trial the county conceded that the Project meets factors two, three, and four. As to factor one, the tax court found "no suggestion * * * that the economic interests of the donors of the charity are furthered by the Project's work" or are the beneficiaries of that work and we agree. Further, we note that the Project's Articles of Incorporation are totally consistent with the first guideline under *North Star*. We also agree that with

respect to factor six, the nominal preferences enjoyed by members of the Project, such as raspberry picking discounts and class enrollment priority, do not constitute payment of dividends.

■ Consideration of guideline five remains relating to whether the class of persons to whom the Project's benefits are available is reasonably related to the Project's charitable objectives. *North Star Research Inst.*, 306 Minn. at 6, 236 N.W.2d at 757. The tax court concluded that while this is "a close call," the Project "arguably" meets guideline five because the burdens of government will be lessened by the beneficial influence the Project will have on its members in gaining self-sufficiency. In applying guideline five, this court has included a subfactor—whether the undertaking lessens the burdens of government. *Worthington Dormitory, Inc. v. Commissioner of Revenue*, 292 N.W.2d 276, 280 (Minn.1980); *Rio Vista Non–Profit Housing Corp. v. County of Ramsey*, 277 N.W.2d 187, 191 (Minn.1979). The county argues that the Project's restriction to the Anishinabe people who are members of the White Earth Reservation is not reasonably related to its charitable objectives and that the undertaking will actually increase, rather than reduce, the burdens of government.

■ We believe that the restriction of beneficiaries is reasonably related to the charitable objectives of the Project. The Project's primary goal is to preserve and teach the cultural heritage of the Anishinabe, and much of its work is tailored to address the social and economic problems suffered by the Mississippi, Pillager, Pembina, and other Ojibwa bands. We conclude that the Project's design can reasonably be expected to benefit the Anishinabe people because the charitable goal of preserving linguistic, cultural, and religious heritage, and the preservation and renewal of natural resources benefits the whole tribal community, even though some of the members may not be poor or unemployed. "Poverty is not a necessary ingredient in determining the charitable nature of the program." *Madonna Towers v. Commissioner of Taxation*, 283 Minn. 111, 118, 167 N.W.2d 712, 716 (1969). As to lessening the burdens of government, both the current activities and future plans of the Project are noteworthy: the Project provides jobs in maple sugar production and sale, has developed farm cooperatives, educates members of the tribe regarding cultural traditions and future plans include providing housing that might otherwise need to be provided by the government. We conclude that there is sufficient evidence to reasonably support the tax court's finding that guideline five is satisfied and that the Project is therefore entitled to an exemption.[1]

Affirmed.

---

1. While we conclude that there is sufficient evidence to satisfy factor five of *North Star*, we note that these are *guidelines* only, and that failure to meet one or more guideline considerations does not necessarily defeat a claim of tax exemption.

*American Ass'n of Cereal Chemists v. County of Dakota*, 454 N.W.2d 912, 914 (Minn.1990); *Mayo Found. v. Commissioner of Revenue*, 306 Minn. 25, 36, 236 N.W.2d 767, 773 (1975).