COMMUNITY MEMORIAL HOME
AT OSAKIS, MINNESOTA,
INC., Relator,

v.

COUNTY OF DOUGLAS, Respondent.

No. C0–97–671.

Supreme Court of Minnesota.

Dec. 18, 1997.

Kevin J. Hughes, Timothy S. Murphy, Hughes, Mathews & Didier, P.A., St. Cloud, for appellant.

Allen L. Senstad, Douglas County Atty., Daniel C. Lee, Alexandria, for respondent.

## OPINION

BLATZ, Justice.

This case comes before this court on certiorari pursuant to Minn.Stat. § 271.10·(1996) and Minn. R. Civ.App. P. 116.01–.06. Asserting that Terrace Heights qualifies as a purely public charity, Community Memorial Home of Osakis, Minnesota, Inc., the relator, filed a petition in the tax court appealing Douglas County's denial of a property tax exemption. The tax court denied the exemption, finding that Terrace Heights was not a purely public charity. We affirm.

Relator owns and operates both a skilled nursing home and an assisted living facility. Terrace Heights is an assisted living facility which relator built as an addition to Community Memorial Home, relator's skilled nursing home. Both facilities are located at 410 Main Street West in Osakis, Minnesota, which is within Douglas County. Douglas County assessed ad valorem taxes against Terrace Heights, which is the basis for this appeal.

Terrace Heights' purpose is to provide care for the elderly who need support, but do not need services at the level provided by traditional skilled nursing homes. The only physical requirement of the residents is that they are "able to live safely in an assisted living environment and ambulate with or without the assistance of an aid, such as a walker or wheel chair." Terrace Heights opened in January 1995, and was financed primarily by the issuance of Health Care Facilities Revenue Bonds.[1]

Residents of Terrace Heights are required to sign standard rental agreements and pay rent at rates comparable to market rates of other similar facilities. Approximately 55% of the residents' rents are paid in whole or in part through alternative grant programs administered by Douglas County. The alternative grant payments are approximately 20% below the market rate. Terrace Heights writes off the difference between the alternative grant payments and the market rate rents generally charged. This write-off has been estimated to total $23,000 per year. Since opening, this facility has not exceeded 80% capacity, although it routinely accepts residents referred by Douglas County Social Services who "have been or were in the process of being evicted from other assisted living facilities due to inability to pay market rates charged by such other facilities."

Because of Terrace Heights' association with and close proximity to Community Memorial, its residents also have the benefit of approximately 120 volunteers who actively serve both facilities. In addition, the two facilities received approximately $17,111 in charitable donations from 1994 through 1996. There is no indication as to the exact allocation of the donated funds between the two facilities.[2]

---

1. While Osakis issued the Health Care Revenue Bonds, the city did not secure the bonds and has no obligation whatsoever in ensuring the financing for Terrace Heights. The bonds were secured by a mortgage lien on and security interest in relator's skilled nursing home and the assisted living facility upon completion.

2. The parties stipulated to the fact that almost $10,000 of the donations were allocated to either Community Memorial's chapel fund or the stained glass window fund and were not available to the Terrace Heights facility. Also, according to Terrace Heights' and Community Memorial's combined financial statements, no

In 1995, Douglas County determined that Terrace Heights' estimated market value was $623,100. This estimated market value was used as the basis for assessing ad valorem taxes payable in 1996 of $30,226. Asserting that Terrace Heights was exempt from ad valorem taxes, relator appealed the decision to impose ad valorem taxes to the Douglas County Board of Equalization, which affirmed stating "the Terrace Heights facility is more an apartment complex than [a] medical [facility]."

Subsequent to the Board of Equalization's decision, the case was submitted to the Minnesota Tax Court upon a stipulation of facts. The tax court affirmed the decision of the Board of Equalization, specifically finding that Terrace Heights satisfied three of the *North Star* factors used to establish that an institution qualifies as a purely public charity, but failed to satisfy the remaining three factors. *See North Star Research Inst. v. County of Hennepin,* 306 Minn. 1, 6, 236 N.W.2d 754, 757 (1975). This court's review of tax court decisions is limited by Minn.Stat. § 271.10, subd. 1 (1996) to determining: "(1) whether the tax court lacked jurisdiction; (2) whether the tax court's decision was supported by the evidence or in conformity with law; or (3) whether the tax court committed an error of law." *Questar Data Sys., Inc. v. Commissioner of Revenue,* 549 N.W.2d 925, 927–28 (Minn.1996) (citation omitted). The parties stipulate that there are no material facts in dispute and that this case strictly involves the resolution of the legal issue of whether the Terrace Heights facility was exempt from ad valorem taxes. "Our examination of the factors considered by the tax court must be in light of the standard of review requiring us to uphold the tax court decision where sufficient evidence exists for the tax court to reasonably reach the conclusion it did." *American Ass'n of Cereal Chemists v. County of Dakota,* 454 N.W.2d 912, 914 (Minn.1990) (citation omitted).

## I.

The first issue presented in this case is whether there is sufficient evidence upon which the tax court could reasonably

base its decision to deny Terrace Heights a property tax exemption. "All property is presumed taxable, and the burden is on the party seeking exempt status to prove entitlement to the claimed exemption." *World Plan Executive Council–U.S. v. County of Ramsey,* 560 N.W.2d 87, 88–89 (Minn.1997) (citing *Junior Achievement of Greater Minneapolis, Inc. v. State,* 271 Minn. 385, 387, 390, 135 N.W.2d 881, 883, 885 (1965)). However, institutions of purely public charity are exempt from taxation. *See* Minn. Const. art. X, § 1; *see also* Minn.Stat. § 272.02, subd. 1(6) (1996). "Charity" was defined by this court in *Junior Achievement:*

> The legal meaning of the word "charity" has a broader significance than in common speech and has been expanded in numerous decisions. Charity is broadly defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, *or otherwise lessening the burdens of government.*

271 Minn. at 390, 135 N.W.2d at 885 (footnotes and internal quotations omitted) (emphasis added).

In *North Star,* this court established the following factors as guidelines for determining whether an institution qualifies as a purely public charity for purposes of a property tax exemption:

(1) whether the stated purpose of the undertaking is to be helpful to others without immediate expectation of material reward;

(2) whether the entity involved is supported by donations and gifts in whole or in part;

(3) whether the recipients of the "charity" are required to pay for the assistance received in whole or in part;

(4) whether the income received from gifts and donations and charges to users produces a profit to the charitable institution;

contributions were allocated to Terrace Heights        in 1995 or 1996.

(5) whether the beneficiaries of the "charity" are restricted or unrestricted and, if restricted, whether the class of persons to whom the charity is made available is one having a reasonable relationship to the charitable objectives; [and]

(6) whether dividends, in form or substance, or assets upon dissolution are available to private interests.

306 Minn. at 6, 236 N.W.2d at 757. "Since *North Star,* this court has interpreted the fifth *North Star* factor as including the 'lessening the burdens of government' language from *Junior Achievement* as an additional subfactor to consider in determining if the property is to be tax exempt." *World Plan,* 560 N.W.2d at 89.

The tax court found that Terrace Heights satisfied factors (1), (4), and (6), but did not satisfy factors (2), (3), and (5). This court will therefore address the factors which the tax court found to be lacking.

■ We turn first to an examination of the second *North Star* factor. To satisfy this factor, relator must show that Terrace Heights is supported, in whole or in part, by charitable donations. Relator argues that the $17,000 received by both institutions, the acceptance of reduced rent payments, and the time donated by volunteers all support the conclusion that Terrace Heights is supported by charitable donations. We disagree. Relator has not sustained its burden of proof on this issue for three reasons: (1) it has provided no evidence which shows that Terrace Heights actually received any of the $17,000 donated; (2) Terrace Heights' decision to accept alternative grant payments in lieu of full market rate rents appears to be a business decision, as the facility has yet to reach capacity and the alternative would be to have empty rental units; and (3) relator has provided no evidence as to how much of the volunteer services were actually benefitting the Terrace Heights' residents. Because relator has not sustained its burden of proof on this issue, the tax court's decision was supported by the evidence, and it cannot be said that the tax court committed an error of law.

■ Next we examine whether the third *North Star* factor was satisfied. To satisfy this factor, relator must prove that residents of Terrace Heights received housing or services free of charge, or at considerably reduced rates. In *Rio Vista Non–Profit Hous. Corp. v. County of Ramsey,* this court found that the distinction to be made in determining the third *North Star* factor is whether residents "receive the housing at considerably less than market value or cost." 277 N.W.2d 187, 191–92 (Minn.1979).

■ When addressing the third factor, relator's argument is two-fold. First, it argues that the fact that Terrace Heights is operating at a loss is prima facie evidence that the residents receive services that they do not pay for. Secondly, it argues that residents receive many services free because of Terrace Heights' association with the skilled nursing home. Relator has failed to meet its burden of proof on this issue. The fact that Terrace Heights is operating at a loss is not sufficient evidence to satisfy the third *North Star* factor. Arguably, operating at a loss could be attributable to many other problems, such as the unit vacancies, rather than the residents' failure to pay full costs. Further, the evidence stipulated to at trial by both parties does not support relator's argument that the residents receive services that they do not pay for. While relator contends that, unlike other facilities, it provides housekeeping, linen supply, special meals, and personal care assistance services at no additional charge, the relator's own lease agreement specifically states that these services are included in the monthly rental amounts. Because relator has not shown that Terrace Heights provides housing or services free or at reduced costs, the tax court's decision was supported by the evidence, and it cannot be said that the tax court committed an error of law.

■ Finally, we examine whether the fifth *North Star* factor is met. To satisfy the fifth *North Star* factor, relator must prove that any restrictions on the class benefitted by the charity is reasonably related to the ultimate objectives of the institution, and it must also show that the institution is somehow lessening the burdens of government.

*North Star,* 306 Minn. at 6, 236 N.W.2d at 757; *World Plan,* 560 N.W.2d at 89. The tax court found that the first portion of the fifth *North Star* factor was satisfied, in that Terrace Heights' only restriction, that the residents be ambulatory, bore a reasonable relationship to the facility's charitable objectives. Therefore, at issue here is whether the fifth subfactor requirement, that the facility lessen the burdens of government, is met. *See World Plan,* 560 N.W.2d at 89. In analyzing whether a facility lessens the burdens of government, we should look to "[t]he benefit conferred upon the public and the consequent relief of the burden upon the state to care for and advance the interest of its citizens [as these] are the fundamental grounds upon which exemption of charitable institutions is based." *Junior Achievement,* 271 Minn. at 391, 135 N.W.2d at 886.

■ Relator asserts that Terrace Heights lessens the burdens of government because it provides care for residents who otherwise would be required to live in a skilled nursing home and that it accepts referrals of elderly citizens who are in the process of being evicted from other assisted living facilities. Relator's argument is not persuasive, however, because no evidence was presented as to the specific level of care required for the residents, which would have provided the court with a basis for determining whether these residents would otherwise require skilled nursing home care. In addition, relator has not shown that Terrace Heights' acceptance of referrals from Douglas County is anything more than a business decision to fill empty rental units. The record is devoid of evidence demonstrating that Terrace Heights' intended purpose is to provide housing and services for the economically disadvantaged or that it will continue to do so in the future. Upon the facts as stipulated, it cannot be said that Terrace Heights lessens the burdens of government. Therefore, the tax court's decision is supported by the evidence and is in conformity with the law.

## II.

■ The second issue presented in this appeal is whether a denial of the property tax exemption violates the United States and Minnesota Constitutions. The Fourteenth Amendment to the United States Constitution provides that no person shall be denied equal protection of the laws. The Uniformity Clause found in Article Ten, Section One of the Minnesota Constitution provides that "[t]axes shall be uniform upon the same class of subjects." "We have determined that the state [U]niformity [C]lause is no more restrictive upon the state legislature's power to tax or classify than the federal [E]qual [P]rotection [C]lause, and that an analysis under equal protection is applicable to the state constitutional challenge." *Lund v. County of Hennepin,* 403 N.W.2d 617, 619 (Minn.1987).

■ Relator argues that in the event Terrace Heights is determined not to be tax exempt, Douglas County unfairly assessed the facility for property taxation purposes in violation of the above cited constitutional provisions. "The burden of proof of unequal or discriminatory assessment is on the petitioning taxpayer." *Empire State Bank v. Lyon County,* 454 N.W.2d 616, 618 (Minn.1990) (citation omitted).

■ Relator provides no support for its allegation of unequal treatment. To sustain this claim, at the very least, Terrace Heights must set forth evidence that the subject property has been treated differently from other similarly situated properties. "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). In the instant case, relator has provided no evidence of other similar properties that were assessed at a lower rate than Terrace Heights. Therefore, the court has no basis for concluding that relator has been assessed differently from other similarly situated properties.

We hold that the tax court's decision to deny a tax exemption was supported by the evidence and that the imposition of ad valorem taxes violates neither the Equal Protection Clause of the United States Constitution

nor the Uniformity Clause of the Minnesota Constitution.

Affirmed.