CARE INSTITUTE, INC.-MAPLEWOOD,
an Indiana nonprofit corp., Relator,

v.

COUNTY OF RAMSEY, Respondent.

No. C5–97–1492.

Supreme Court of Minnesota.

April 9, 1998.

Maun & Simon, PLC, Richard M. Gaal-swyk, St. Paul, for relator.

Susan Gaertner, Ramsey County Atty., David F. Macmillan, Asst. County Atty., for respondent.

## OPINION

PAGE, Justice.

Pursuant to Minnesota Statutes Chapter 278 (1996), relator Care Institute, Inc.-Ma-

plewood ("Care"), a nonprofit corporation, filed petitions with the tax court challenging respondent Ramsey County's 1995 and 1996 tax assessments of Care's real property, consisting of a 100–unit assisted living facility located at 1200 Lakewood Drive, Maplewood, Minnesota. The petitions were filed in Ramsey County District Court and then transferred to the tax court pursuant to Minn. Stat. § 271.01, subd. 5 (1996). Specifically, Care's petition, while not contesting the County's valuation of the property, claimed that Care was entitled to a tax exemption as an institution of purely public charity pursuant to Minn. Const. art. X, § 1[1] and Minn. Stat. § 272.02, subd. 1(6) (1996).[2] The tax court held that Care was not an institution of purely public charity and that Care's constitutional rights to equal protection of the laws and uniformity of taxation were not violated. This court granted Care's petition for certiorari.

As it did at the tax court, Care argues that collateral estoppel and *stare decisis* should operate to bar the County's claim that Care is not exempt from taxation as an institution of purely public charity. Alternatively, Care argues: (1) that the tax court erred in concluding that Care was not an institution of purely public charity; and (2) that Care's rights to equal protection of the laws and uniformity of taxation were violated because the County singled out Care's Maplewood property for a rigid application of the charitable institution factors identified in *North Star Research Institute v. County of Hennepin,* 306 Minn. 1, 236 N.W.2d 754 (1975). We affirm.

Care is affiliated with seven nonprofit corporations,[3] three in Minnesota and four in

1. Article X, section 1 of the Minnesota Constitution guarantees in part:

   Taxes shall be uniform upon the same class of subjects and shall be levied and collected for public purposes, but * * * institutions of purely public charity * * * shall be exempt from taxation except as provided in this section. * * * The legislature by law may define or limit the property exempt under this section * * *.

2. 272.02 EXEMPT PROPERTY.

   Subdivision 1. All property described in this section to the extent herein limited shall be exempt from taxation:
   * * * *
   (6) Institutions of purely public charity * * *.

3. The seven nonprofit corporations and the facilities they operate are as follows:
   Care Institute, Inc.-Roseville operates Rosewood Estates of Roseville, Minnesota;
   Care Institute, Inc.-Highland operates Rosewood Estates of Highland Park, Minnesota;

other states, engaged in the operation of similar assisted living facilities. Each of these nonprofit corporations is a separate legal entity. Each of the Minnesota nonprofit corporations is managed by a separate for-profit management company. One of the Minnesota nonprofit corporations, Care Institute, Inc.-Roseville, was the subject of a Chapter 278 proceeding decided on February 2, 1996, by a different tax court judge. *Care Institute, Inc. v. County of Ramsey*, File No. C9–95–563, 1996 WL 45908 (Minn. Tax Ct. Feb. 2, 1996). In that proceeding, the tax court determined that Care Institute Inc.-Roseville was an institution of purely public charity and was therefore entitled to a property tax exemption under Minn.Stat. § 272.02, subd. 1(6). That decision was not reviewed by this court.

Care's facility was constructed in 1994 at a cost of $6,309,985 on land purchased for $600,400. The facility was financed by tax exempt revenue bonds which have a face value of $11,830,000 issued by the City of Maplewood with repayment of the bonds to be funded by the facility's operations. The facility opened in January 1995 and Care's operating expenses for the facility that year, excluding debt service, were $930,022. In 1996, revenue was $2,142,199 and operating expenses were $1,548,808. However, once debt service is accounted for, Care's net assets decreased $1,307,253 in 1995, and $828,657 in 1996.

The facility is an assisted living facility developed around the concept of affording complete nursing home services to residents in a less institutional setting than a traditional nursing home. The facility has 100 individual apartment units, complete with kitchens and full bathrooms. Each unit is carpeted and handicap accessible, as are the facility's common areas. An emergency help system is available on-site, providing home health care workers who give residents assistance as needed. The apartment units are rented on a monthly basis and the rental fee is calculated at market rates and intended to cover the cost of all services and amenities provided by the facility, including: use of the apartment and common area lounges, utilities, local telephone service, basic cable television, weekly housekeeping, the emergency help system, two meals per day, use of washing machines and dryers, off-street parking, heating and air conditioning, social programs, transportation to shopping and social events, social service case management, three care conferences per year, a weekly clinic by a home health care agency, as well as dietary, prescription, and psychiatric consultations. The average age of the facility's residents is 83–years–old and 80% have some form of Alzheimer's disease or dementia. To protect residents from wandering away from the facility, security doors have been installed.

The facility employs three licensed social workers, two therapeutic recreational therapists, and a bookkeeper. Care provides an apartment at the facility for the "Courage Center" where, for a fee, physical, occupational, and speech therapists work with residents. Health care is provided to the residents, for a fee, by a third-party for-profit licensed home health care agency and by individuals employed by the residents themselves.

Several individuals, religious entities, and schools have donated time to the facility, helping with bingo, conducting religious services, providing one-on-one assistance such as letter writing, and engaging in other activities with residents. A total of $110 in cash was donated to Care's facility during 1995 and 1996. A flag, bench, cellular telephone, and hospital bed, along with a two-night hotel stay for use as a fundraising prize, were also donated during that time period. Care Institute, Inc.-Highland included references to

Care Institute, Inc.-Texas operates Brighton Gardens of Austin, Texas and Brighton Gardens of San Antonio, Texas;

Care Institute, Inc.-Illinois operates Brighton Gardens of Prospect Heights, Illinois and Brighton Gardens of Burr Ridge, Illinois;

Care Institute, Inc.-Mesa operates Cypress Court at Mesa, Arizona;

Care Institute, Inc.-Cherry Hill operates nothing but is working on financing for Brighton Gardens of Cherry Hill, New Jersey; and

Care Institute, Inc.-Middletown operates nothing but plans to build Brighton Gardens of Middletown, New Jersey.

Care's facility in its advertising campaign at no cost to Care. While $330,000 was spent on the advertising campaign, the tax court found that only $2,034.66 of that amount was spent on Care's facility. Recreational therapy interns spent more than 900 hours at the facility during 1995 and 1996. Rosewood Estate Management, Inc.-Maplewood, the for-profit company that developed and manages Care's facility, holds a $400,000 non-interest bearing subordinated note from Care. A Minnesota Foundation fund called the Care Institute, Inc.-Maplewood Fund received contributions in the amount of $3,085. All but $35 of that amount was contributed by Care. Care receives a 10% commission from Breaktime Beverage, a vending machine company which has the vending machines contract at the facility. Nurses are provided for clinics and resident care conferences at no extra charge to the residents. However, the cost of these "unbilled" services is built into the fee structure of the home health care agency that provides health care services to the residents.

Care first argues that collateral estoppel bars the County from claiming that Care is not exempt from Minnesota's property tax as an institution of purely public charity under section 272.02, subd. 1(6). Essentially, Care's argument is that its Maplewood facility is so similar in terms of programs, structure, and purpose to Care Institute, Inc.-Roseville's facility, which the tax court found exempt under section 272.02, subd. 1(2), that the County cannot now claim that Care is not exempt from Minnesota's property tax as an institution of purely public charity.

■ Care's collateral estoppel argument has no merit. The doctrine of collateral estoppel applies when each of the following elements are satisfied:

(1) [T]he issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Tarutis v. Commissioner of Revenue*, 393 N.W.2d 667, 669 (Minn.1986) (citations omit-

ted). In *Tarutis*, we quoted the United States Supreme Court as follows:

[C]ollateral estoppel in income tax cases "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal principles remain unchanged."

*Id.* at 669 (quoting *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948)). While *Tarutis* was an income tax case, we see no reason to treat property tax cases differently.

The tax court did not apply collateral estoppel here because it found that "[t]he facts of this case, including critical facts such as the identity of the petitioner, the location of the subject property and valuation year are different from the facts of the Care Roseville case." We agree. Clearly, the first and third elements of collateral estoppel have not been met. Care and Care Institute, Inc.-Roseville are separate entities operating separate and distinct facilities in different locations. Further, the controlling facts and the tax year were different in the Care Institute, Inc.-Roseville case. Thus, the issue of whether Care is an institution of purely public charity is not identical to the issue before the tax court in *Care Institute, Inc.-Roseville*, and, therefore, the doctrine of collateral estoppel does not apply to this case.

■ We next address Care's *stare decisis* argument. Underlying the doctrine of *stare decisis* is the principle that, for the sake of certainty, law, once established, is applicable to subsequent cases in the same court in which the facts are substantially the same, even if the parties are not, and is binding on all other courts of equal or lower rank. We set out the law for determining whether a taxpayer is entitled to exemption as an institution of purely public charity in *North Star Research Inst. v. County of Hennepin*, 236 N.W.2d 754. In *North Star*, we indicated that the following factors are to be used as guidelines in making that determination:

(1) whether the stated purpose of the undertaking is to be helpful to others without immediate expectation of material reward;

(2) whether the entity involved is supported by donations and gifts in whole or in part;

(3) whether the recipients of the "charity" are required to pay for the assistance received in whole or in part;

(4) whether the income received from gifts and donations and charges to users produces a profit to the charitable institution;

(5) whether the beneficiaries of the "charity" are restricted or unrestricted and, if restricted, whether the class of persons to whom the charity is made available is one having a reasonable relationship to the charitable objective; and

(6) whether dividends, in form or substance, or assets upon dissolution are available to private interests.

*Id.* at 756–57. A subfactor, added to the fifth *North Star* factor in *Rio Vista Non–Profit Hous. Corp. v. County of Ramsey,* 277 N.W.2d 187, 191 (Minn.1979), requires that the institution seeking exemption show that it lessens the burdens on government. Care, however, argues that two cases, *Assembly Homes, Inc. v. Yellow Med. County,* 273 Minn. 197, 140 N.W.2d 336 (1966), and *Inter–Faith Soc. Services, Inc. v. County of Carlton,* File No. C–84–708, 1984 WL 2100 (Minn. Tax Ct. Dec. 20, 1984), *aff'd* 376 N.W.2d 687 (1985), are "key precedents compel[ling] exemption." Care also argues that the *Care Institute, Inc.-Roseville* case supports its claimed exemption.[4]

▪ Care's basic argument is that because a nursing home was found to be exempt in *Assembly Homes,* an assisted living complex was found to be exempt in *Inter–Faith,* and because an organization related to it was found to be exempt by the tax court in *Care Institute, Inc.-Roseville,* it is entitled to exemption. In making this argument, Care would have this court ignore the guidelines we established in *North Star.* We decline to do so. Resolution of a given case under Minn.Stat. § 272.02, subd. 1(6), requires an

analysis of the facts of that case in light of the *North Star* factors with each case being decided on its own merits. *See Mayo Found. v. Commissioner of Revenue,* 306 Minn. 25, 36, 236 N.W.2d 767, 773 (1975). The doctrine of *stare decisis* does not prevent the County from claiming that Care is not an institution of purely public charity.

▪ Having decided that the doctrines of collateral estoppel and *stare decisis* do not bar the County from claiming that Care is not an institution of purely public charity entitled to exemption under Minn.Stat. § 272.02, subd. 1(6), we must review the tax court's application of the *North Star* factors in this case. Property tax exemptions are to be "strictly construed, * * * for the general rule is that all property is taxable and the burden of proof is on the taxpayer." *American Ass'n of Cereal Chemists v. County of Dakota,* 454 N.W.2d 912, 914 (citation omitted). Although the *North Star* factors are only guidelines, *White Earth Land Recovery Project v. County of Becker,* 544 N.W.2d 778, 780 (Minn.1996), and every factor need not be present for an institution to qualify for exemption, this court will affirm the tax court when, after an independent review of the record, there is sufficient evidence in the record upon which the tax court could have reasonably based its conclusion. *Chateau Community Hous. Ass'n, Inc. v. County of Hennepin,* 452 N.W.2d 240, 242 (Minn.1990). Tax court determinations regarding whether a taxpayer is entitled to an exemption as an institution of purely public charity are given great deference by this court when those determinations are reasonably supported by the evidence. *See White Earth,* 544 N.W.2d at 780. Here, the tax court concluded that Care failed to satisfy the second, third, and fifth *North Star* factors and therefore was not entitled to exemption as an institution of purely public charity. In like manner, our review of the record before us leads us to conclude that the tax court's determinations that Care failed to satisfy the second, third, and fifth *North Star* factors are reasonably supported by the evidence in the record.

---

4. For the record, it should be pointed out that this court is not bound by decisions of the tax court.

■ The second *North Star* factor is whether the entity involved is supported by donations in whole or in part. Care claims that a number of donations it received from other individuals and organizations are sufficient to satisfy *North Star's* requirements. The tax court found that certain of Care's claimed donations, including time given by volunteers helping with bingo, religious services, and tasks such as letter writing; $110 in cash received in 1995 and 1996; items of property including a flag, bench, cellular telephone, and a hospital bed; a two-night hotel stay used as a fundraising prize; and marketing expertise provided by Care Institute, Inc.-Highland valued at $2,034.66, did constitute donations to Care. However, the tax court also found that 900 hours spent by recreational therapy interns at Care's facility without pay during 1995 and 1996; costs paid to Interim Healthcare by a state-funded Alternate Care Grant Program on behalf of two Care facility residents; rent paid to Care by relatives of residents; a $400,000 noninterest bearing note owed to Rosewood Estate Management, Inc.-Maplewood; the contributions received by the Minnesota Foundation fund on behalf of Care; the 10% commission on sales from vending machines; and nursing services provided for "unbilled" clinics did not constitute donations to Care.

Clearly, the items found by the tax court to constitute donations to Care are not sufficient to meet the second *North Star* factor. Care claims that the tax court erred in finding that the excluded items did not constitute donations and that when the excluded items are included, the second *North Star* factor is met. We disagree. Our view of the record indicates that there is adequate support for the tax court's findings. Where there is support in the record, we will not substitute our judgment for that of the tax court. Further, we note that even if all of the claimed items, including those excluded by the tax court, were determined to be donations to Care, the end result would be the same, that is, the second *North Star* factor would not be met. Given the land and construction costs associated with Care's Maplewood facility and the revenue generated by the facility, the total value of all donations, whether viewed as the tax court found or as Care

claims, is insufficient to satisfy the second *North Star* factor.

The third *North Star* factor is whether the recipients of the "charity" are required to pay for the assistance received in whole or in part. The record indicates that the residents of Care's Maplewood facility pay market rates for rent, that the rates are specifically set to cover the cost of amenities, services, and assistance provided to residents, and that Care's goal in setting the rates is to achieve a balanced budget for the facility. Thus, the record adequately supports the tax court's finding that Care failed to satisfy the third *North Star* factor.

We have said that in order to satisfy the fifth *North Star* factor, the taxpayer "must prove that any restrictions on the class benefited by the charity is reasonably related to the ultimate objectives of the institution, and it must also show that the institution is somehow lessening the burdens of government." *Community Mem'l Home at Osakis, Minnesota, Inc. v. County of Douglas*, 573 N.W.2d 83 (Minn.1997) (citing *North Star*, 236 N.W.2d at 757, and *World Plan Executive Council–United States v. County of Ramsey*, 560 N.W.2d 87, 89 (Minn.1997)). While the tax court found that Care did not place any restrictions on the class of people benefited by its "charity," it went on to find that Care failed to establish that it lessened the burdens of government and therefore failed to satisfy the fifth *North Star* factor. Our careful review of the record leads us to conclude that the record adequately supports the tax court's determination that Care failed to carry its burden of proving that it lessened the burdens on government.

Having failed to carry its burden of proving that it satisfies the second, third, and fifth *North Star* factors, we conclude that Care does not qualify as an institution of purely public charity within the meaning of Minn.Stat. § 272.02, subd. 1(6), and is not exempt from Minnesota's property tax.

Finally, we turn our attention to Care's constitutional claims. Care argues that the Ramsey County system for determining whether a property is exempt as an institution of purely public charity is arbitrary and

that the system operated to Care's detriment in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Uniformity Clause of the Minnesota Constitution. Having concluded that Care does not qualify as an institution of purely public charity under Minn.Stat. § 272.02, subd. 1(6), we need not, and therefore do not, address Care's constitutional claims.

Affirmed.